## APPEAL OF W. C. LANGLEY & CO.

Docket No. 2567.  Submitted May 15, 1925.  Decided June 30, 1925.

Where a seat on the New York Stock Exchange is received by a partnership at an agreed valuation as the partner's capital contribution and it is sold at a loss in 1917, the partnership may deduct such loss in computing its taxable income.

*Henry J. Richardson, Esq.*, and *Franklin C. Parks, Esq.*, for the taxpayer.
*Lee I. Park, Esq.*, for the Commissioner.

Before STERNHAGEN, LANSDON, GREEN, and LOVE.

This appeal involves a deficiency in profits taxes for the calendar year 1917 in the sum of $4,408.26. The Commissioner has disallowed a loss in the sum of $25,000, alleged to have been sustained by the taxpayer as the result of the purchase and sale of a seat on the New York Stock Exchange.

FINDINGS OF FACT.

The taxpayer is a partnership organized on or about the 15th day of May, 1915, and dissolved on the 31st day of December, 1917. At the time of its organization one of the partners contributed to its

capital the sum of $100,000 in cash and another contributed a seat on the New York Stock Exchange at an agreed valuation of $75,000. There was also a third partner, the amount of whose contribution does not appear. Partnerships were not permitted to be the record owners of seats on the Stock Exchange, but the taxpayer became the beneficial owner of the seat contributed by one of the partners. The partnership was dissolved on December 31, 1917, and shortly prior thereto the seat was sold by the partnership for $50,000 to an individual who was to become a partner in a new partnership which was to succeed the taxpayer. The transfer of the seat was duly made on the books of the Stock Exchange. It was definitely understood and agreed between the partners that the seat was the property of the partnership, and that any gain or loss resulting therefrom would be the gain or loss of the partnership. A seat on the Exchange was essential to the successful conduct of the business of both the taxpayer and its successor. The loss sustained as the result of the purchase and sale was $25,000.

### DECISION.

The deficiency determined by the Commissioner is disallowed.

### OPINION.

GREEN : The Commissioner contends that a partnership can have no interest in a seat on the New York Stock Exchange.

In the case of *O'Dell* v. *Boyden*, 150 Fed. 731, the Circuit Court of Appeals, Sixth Circuit, had before it a very similar set of facts. A partner, the legal owner of a seat on the New York Stock Exchange, sold to the partnership a one-fourth interest in the seat and contributed the remainder thereof to the partnership as his proportion of its capital. The partnership was declared a bankrupt and the trustee took possession of and sold the partnership's beneficial interest in the seat. Judge Lurton, speaking for the court, said :

The New York Stock Exchange is an unincorporated association having a limited membership. No formal certificate of membership is issued, and, aside from repute, Henrotin's only evidence of membership consists in a letter notifying him of his election and asking him to sign the constitution and by-laws. This letter is the document referred to as the " certificate " assigned to O'Dell. Though the membership is personal, it is transferable, subject to the conditions imposed by the articles of the association already referred to. But the transfer is not made except by the acceptance of a candidate for membership who is elected in the room and stead of the retiring member. When a " transfer " of membership is made according to the terms which clog such transfers, the transferee becomes a member and the transferror ceases to be one. It follows, therefore, that the mere execution of a paper preparatory to transferring or assigning a membership works no change in

membership whatever. Thus in 1892, this same membership which was personal to Henrotin, was transferred or assigned to a partnership of which he was a member. That did not deprive Henrotin of his " seat " or " membership." He continued to be a member and to exercise all of the privileges of a member. In May, 1905, he again joined one of his partners in transferring or assigning this same membership to the appellant, O'Dell. Nevertheless, he continued to be and act as a member, and O'Dell did not thereby become a member. What was, then, the effect of these transfers or assignments made of this " seat," first to Holzman & Co. and then to O'Dell? Though possessing none of the qualities of a negotiable or even a nonnegotiable instrument, this membership has a pecuniary market value and constitutes a property right, which, under the settled principles of the law, is capable of passing by will or inheritance. *In re Hellman*, 174 N. Y. 254, 66 N. E. 809, 95 Am. St. Rep. 582. Though its sale and transfer are clogged with onerous conditions and the property one of a narrow character, these conditions and characteristics go only to the reduction of the pecuniary market value, and do not deprive it of its character as property. *Powell* v. *Waldron*, 89 N. Y. 328, 42 Am. Rep. 301. As a valuable property right, incorporeal in character, it may be reached and subjected as property by a creditor through the flexible remedies of equity. A court of chancery through a decree *in personam* may compel the co-operation of the member in steps necessary to consummate a sale and transfer under the rules of the association. See *Massie* v. *Watts*, 6 Cranch, 148–157, 3 L. Ed. 181, as to the general powers of a court of equity through jurisdiction over the person, *Ager* v. *Murray*, 105 U. S. 126–131, 26 L. Ed. 942, where a patent right was subjected, and *In re Emrich* (D. C.) 101 Fed. 231. Such a seat constitutes a property right which is not only descendible, taxable and assignable, but is one which passes to the trustee of a bankrupt member, and the bankrupt court may compel the bankrupt to sign all transfers or consents essential to bring about its sale under the rules of the exchange. *In re Ketchum* (D. C.) 1 Fed. 840; *In re Werder* (C. C.) 15 Fed. 789; *Hyde* v. *Woods*, 94 U. S. 523, 24 L. Ed. 264; *Sparhawk* v. *Yerkes*, 142 U. S. 1; 12 Sup. Ct. 104, 35 L. Ed. 915; *Page* v. *Edmunds*, 187 U. S. 596, 23 Sup. Ct. 200, 47 L. Ed. 318.

The taxpayer partnership was in fact the beneficial owner of the seat on the Exchange. The seat was acquired not by actual purchase but through the contribution of a partner. The valuation thereon had been agreed upon by the partners. The situation is exactly the same as if the partner had contributed, instead of the seat, the sum of $75,000, and such sum so contributed had been expended in the purchase of a seat on the Exchange.