In the Matter of the Application of JEROME A. NEWMAN, Petitioner, Respondent, for an Order Pursuant to Article 78 of the Civil Practice Act, against HENRY K. SMITH, as President of ADAMS EXPRESS COMPANY, and GEORGE E. CLARK, as Treasurer of ADAMS EXPRESS COMPANY, Appellants.

First Department, December 19, 1941.

*Alfred A. Cook* of counsel [*William M. Parke* and *Henry Cohen* with him on the brief; *Chadbourne, Wallace, Parke & Whiteside,* attorneys], for the appellants.

*Albert R. Connelly* of counsel [*Robert T. Swaine* and *Roy T. Parker, Jr.,* with him on the brief; *Cravath, deGersdorff, Swaine & Wood,* attorneys], for the respondent.

GLENNON, J. The petitioner purchased 100 shares of the stock of Adams Express Company on June 25, 1941. According to his petition, Adams Express Company is an unincorporated joint stock association organized pursuant to written articles of association in the State of New York under the common-law right of contract.

The company was organized in 1854 and was engaged in the express forwarding business and later in the business of issuing

and selling travelers' checks until 1918 when it sold its physical property to American Railway Express Company and its money order business to American Express Company. Since that time its business has consisted almost exclusively of dealing in money and securities.

It was registered under the Investment Company Act of 1940 as a closed-end, diversified investment company of the management type. As of January, 1941, the company had 14,644 stockholders who held stock of record in numbers of shares ranging from 1 to 26,334. In the early part of June, 1941, before the petitioner became a stockholder of record in the company, he informed the executive vice-president thereof that, together with certain associates, he was considering the purchasing of a substantial block of Adams by making an offer to stockholders at a price somewhere between the then market price and the book value of the stock and, in substance, by this means acquiring control. Apparently with that end in view, on September 9, 1941, he orally requested certain members of the board of managers of the company to give him access to the stockholders' list. On the following day he confirmed his request in writing. On September twelfth he made a formal application to Henry K. Smith, as president of the company, for permission to inspect the transfer book and the list of stockholders. In an affidavit bearing date October 3, 1941, he stated:

" Petitioner's purpose in requesting inspection of the stock books of Adams is to make available to stockholders of Adams an opportunity to sell their stock to a group formed by petitioner and his associates at a price substantially above its present market price. Current prices of Adams stock on the New York Stock Exchange have approximated only 66 per cent of the liquidating value of the stock, based upon market quotations for securities owned by Adams. The offer is proposed to be made to all stockholders of Adams, on equal terms, up to an aggregate amount representing a material percentage of the total outstanding stock of Adams, an offer contemplating an investment of from $5,000,000 to $7,000,000.

" In proposing to make such offer, it is the belief of petitioner and his associates that by acquiring a sufficient interest in Adams to exercise a voice in its management and in the direction of its policies they will be able to improve the market value of its stock not only to the extent that it now fails to reflect its liquidating value but to a considerably greater degree, an objective obviously in the interests of the corporation and all its stockholders.

" While it is not yet possible to identify all the persons who will be associated with petitioner in the proposed offer, enough can be said, I believe, to demonstrate that the present application is made in entire good faith."

After the board of managers, by resolution on September 23, 1941, formally rejected the petitioner's application, " after consideration of the welfare of the bondholders and stockholders of Adams in the light of the purposes stated by petitioner," he instituted this proceeding for a peremptory order pursuant to the provisions of article 78 of the Civil Practice Act to grant him permission to inspect the stock list of the Adams Express Company. The court at Special Term, by order dated November 12, 1941, granted the application. In so doing we believe the court fell into error.

The present application for a peremptory order under article 78 of the Civil Practice Act, as Judge FINCH said in *Matter of Coombs* v. *Edwards* (280 N. Y. 361, 364), " takes the place of the old writ of mandamus. It is employed only in cases where other remedies fail and the conditions surrounding its use are not found in the ordinary suit at law. The burden is thrown on the applicant for the order to demonstrate the necessity and the propriety of its use. Even then the court may consider by way of defense the hardship and injustice to the defendant, the conduct of the applicant and the interest of third persons. Although the order is classed as a legal remedy, equitable principles largely control its issuance. (*Duncan Townsite Co.* v. *Lane*, 245 U. S. 308.) While the applicant must present an issue for the enforcement of a clear legal right, yet even then the court may determine whether, in the exercise of a sound discretion, it shall grant or withhold the order."

Even though the petitioner could point to some statute which would give him the right to inspect and copy the stockholders' list of the Adams Express Company, in the exercise of sound discretion we should feel constrained, under the circumstances of this particular proceeding, to deny it. There is nothing to indicate that the ultimate purpose of the application is for the benefit of the association or even its membership. Concededly, what he desires is " to make available to stockholders of Adams an opportunity to sell their stock to a group formed by petitioner and his associates at a price substantially above its present market price." The offer he contemplated making to the stockholders would represent " an investment of from $5,000,000 to $7,000,000," and yet the figures which are presented show that this amount would represent only about twenty or twenty-five per centum of the market value of the net assets of the association as of August, 1941.

We cannot see how either the company or its stockholders could benefit by the proposed transaction. Petitioner has failed to point to any wrongdoing on the part of the management of the company. How the control which he and his associates hope to obtain is to aid in the business of the association is difficult to understand.

What we have said thus far is based solely upon an assumption that petitioner would have a statutory right to inspect the books. The remedy which he seeks can find no support in the law. It must be remembered that the company is an unincorporated joint stock association organized under the common-law right of contract. Petitioner's rights and those of the other stockholders of the association arise out of a private contract pure and simple. Such a right was not enforcible by mandamus at common law. In *Matter of Weidenfeld* v. *Keppler* (84 App. Div. 235; affd. on opinion below, 176 N. Y. 562) Judge O'BRIEN said in part: " It would serve no useful purpose to set forth at length the history of the writ of mandamus, its origin, development and extension, as these have been fully gone over in text books and decisions both in this country and in England. (See High Extr. Leg. Rem. [3d ed.] § 2 *et seq.;* Spelling Inj. & Other Extr. Rem. [2d ed.] § 2 *et seq.;* Merr. Mand. § 2 *et seq.*) Its function, generally speaking, has been to enforce performance of some act or duty commanded by statute or relating to some public matter or right, and the text writers and the decisions all agree in holding that it will not be extended to enforce private rights based on contract."

For the reasons assigned, the order appealed from should be reversed, with twenty dollars costs and disbursements, and the application denied.

MARTIN, P. J., and TOWNLEY, J., concur; O'MALLEY and UNTER-MYER, JJ., concur on the second ground stated in opinion.

Order unanimously reversed, with twenty dollars costs and disbursements, and the motion denied.