Henry A. Hudson, J.
The petitioner seeks to review the determination of the respondent, dated April 13, 1960, denying the petitioner’s application for an operator’s license, upon condition that he might renew such application on or after July 15, 1960, on the ground it is arbitrary, capricious and without authority. The petitioner also seeks an order directing that the respondent process the petitioner’s application forthwith.
*996 The respondent in his answer, denies the allegations of the petition and as a separate affirmative defense alleges that the petitioner’s application was denied after a complete examination of the petitioner’s record pursuant to subdivision 5 of section 71 of the Vehicle and Traffic Law and under the powers vested in the respondent to revoke under section 93-h (subd. 2, par. [b]) thereof.
The petitioner was convicted December 2, 1958 of a violation of section 93-i of the Vehicle and Traffic Law, in that he operated a motor vehicle without insurance. As a result petitioner’s license was revoked by the respondent February 19, 1959. The petitioner alleges that he complied with the revocation order with the exception that on July 15, 1959 he was convicted of driving a motor vehicle while his license was revoked. The petitioner, on March 29, 1960, submitted an application for an operator’s license and under date of April 13, 1960 received a letter from the respondent refusing to issue an operator’s license to the petitioner. Such letter reads as follows:
With reference to your application for a driver’s license, please be advised that your ease has been reviewed and your record carefully examined. Your traffic and safety record, as shown by the records of the Bureau of Motor Vehicles, is such that I consider it inadvisable to approve the issuance of a driver’s license to you at this time.
The basis for this denial is as follows:
Your license was revoked on February 19, 1959 for operating a motor vehicle without insurance. On July 15, 1959 you were convicted of driving while revoked.
It is recommended that you not apply for a license again until July 15, 1960 at which time you may submit an original application. This does not indicate that such an application will be approved, but it will be processed on its merits at this time, taking your entiré record into consideration.
I wish to stress that until you obtain a new license you cannot legally operate a motor vehicle. Any such violation will affect the approval of an application submitted on or after the above date.
Very truly yours,
Wm. S. Hults (Signed)
WILLIAM S. HULTS
Commissioner of Motor Vehicles
By Grace Bowman
Review Unit
. . The petitioner urges that the action of the respondent in denying him the privilege of taking the necessary tests to qualify for the issuance of a driver’s license is arbitrary and capricious and without authority, in that there is no provision in the Vehicle and Traffic Law applicable in this case, authorizing the respondent to deny his application without permitting him to *997 take the necessary tests and meet the requirements to qualify for an operator’s license. Neither the petitioner nor respondent sought to introduce any proof other than as appeared in the petition and answer and the exhibits filed in connection therewith, it being the position of the petitioner that the respondent was without authority in law to refuse to entertain the petitioner’s application for the reasons given.
The factual situation as stated above does not appear to be in dispute.
I will first consider the respondent’s assertion as set forth in his answer that in denying the petitioner’s application, he proceeded pursuant to the provisions of subdivision 5 of section 71 of the Vehicle and Traffic Law and in accordance with the powers vested in him to revoke licenses under section 93-h. The only restriction placed upon the issuance of a new driver’s license in section 93-h (under either subd. 2, par. [b], or subd. 3, par. [b]) is that the privilege of driving shall not be restored for a period of one year from the1 date of such revocation. The only power which is given to the respondent to revoke licenses under section 93-h is that he shall do so upon receipt of evidence that an automobile had been operated upon the public highway while proof of financial security was not in effect. In this case such proof was submitted in the form of the conviction of the petitioner on December 2, 1958. The revocation was issued February 19, 1959. There is nothing contained in the provisions of section 93-h which gives to the respondent any discretion either to revoke the license in the first instance or to extend the period of one year that the revocation is to remain in effect. The respondent states in the affirmative defense set forth in his answer that he proceeded pursuant to subdivision 5 of section 71 of the Vehicle and Traffic Law. This section, so far as it applies to a mandatory revocation, reads as follows: ‘ ‘ 5. Restrictions. Where revocation is mandatory hereunder, no new license shall be issued for at least six months after such revocation, nor thereafter, except in the discretion of the commissioner of motor vehicles ’ ’.
The petitioner urges that this section has no application to the mandatory revocation provided for in section 93-h. I believe that the provision of subdivision 5 of section 71, relating to mandatory revocation, refers solely to those mandatory revocations which are specified in section 71 itself and particularly subdivision 2 thereof, and that the word “ hereunder ” contained in subdivision 5 relates to section 71 alone. It seems clear that the Legislature did not intend that the provisions of subdivision 5 of section 71, relating to the right of the Commissioner to *998 exercise discretion in respect to a renewal of a license which he had revoked, was applicable to the mandatory revocation of one year provided for in section 93-h. Subdivision 10 of section 93-h reads as follows: ‘ ‘ The provisions of subdivision six of section seventy-one of this chapter shall apply to a revocation under this article. ’ ’ I believe that if the Legislature had intended that the provisions of subdivision 5 of section 71 were also to apply, it would have so specified as it did in respect to subdivision 6. If the respondent proceeded pursuant to the authority which he says is given him under either section 93-h or subdivision 5 of section 71, in denying the petitioner’s application, he did so under a mistake of law and without authority.
However, the respondent, in his brief submitted in opposition to this application asserts that he has proceeded upon an entirely different theory and makes no claim to either a right to do so or the fact that he did so pursuant to the provisions of subdivision 5 of section 71. Instead, under the only point made in the brief he states: ‘ ‘ Petitioner was convicted on December 2,1958 of driving a motor vehicle without insurance and of driving an unregistered vehicle, and under the provisions of §§ 93-h and 93-i of the Vehicle and Traffic Law, his operator’s license was revoked. A reading of § 93-i of the Vehicle and Traffic Law indicates that the Legislature considers the violation of driving without insurance to be a misdemeanor under which a fine up to one thousand dollars may be imposed or a sentence of one year, or both. Following this it may be assumed that the petitioner continued to drive upon the highways of this State in utter defiance of the action of the Commissioner of Motor Vehicles, and whether or not he did so drive, it is a fact that on the 15th of July, 1959 he pled guilty to driving without a license. Therefore, when the petitioner applied at the end of the revocation year for his license, his application showed that he had then been so convicted, and the Commissioner in the discretion which he has under subdivision 1-a of § 20 of the Vehicle and Traffic Law determined that no license should be issued to the petitioner until one year after his last violation.”
The respondent states that the pertinent portion of section 20 (subd. 1, par. [a]) under which he proceeded reads as follows: ‘ ‘ An application for a license to operate motor vehicles, as an operator or chauffeur, may be made, by mail or otherwise, to the commissioner or his duly authorized agent upon blanks prepared under authority of the commissioner and an applicant shall furnish such proof of his fitness as the commissioner shall in his discretion determine.” The respondent points out, that under the provisions of section 20 he has the respon *999 sibility of deciding the fitness of applicants for licenses. The meaning of the word “ fitness ” contained in section 20 has been held to mean more than the applicant’s capacity to operate a motor vehicle. (Matter of Bernols v. Fletcher, 280 App. Div. 870.) In that case the court reversed the Special Term holding that the word “ fitness ” used in section 20 (subd. 1, par. [a]) related only to an applicant’s capacity to operate a motor vehicle. However, the reversal was based on the ground that the Commissioner under the discretionary power given him under section 71 (subd. 5) had the right to make the determination he did as a matter of discretion. Had the Commissioner in the present case determined that the petitioner was an unfit person to hold an operator’s license, a different question might be presented upon this application.
In the present case, the letter denying the application contains no suggestion that the applicant was not considered to be a fit person to hold an operator’s license or that his application had been denied upon that ground. On the contrary, it was suggested that he apply in three months and that his application would then be processed on its merits.
While there is nothing in the respondent’s answer or in the respondent’s letter of April 13, 1960 from which the court can determine exactly upon what the respondent’s determination was based, the statement of the Attorney-General, in his brief in opposition to this application, would clearly seem to indicate-that the Commissioner had some other reason or ground than then set forth in his answer or his letter of April 13,1960.
The statement under point I, page 2 of the respondent’s brief above quoted sets forth what would appear to be the real basis for the Commissioner’s action. It is entirely unsupported by any evidence and indicates what would appear to be a mistaken view of the discretionary authority of the respondent under section 20 (subd. 1, par. [a]) of the Vehicle and Traffic Law. In any event no suggestion of these grounds are contained in either the respondent’s letter of April 13, 1960 or his answer in this proceeding.
The court cannot ignore the statement of respondent’s counsel in his brief as it is clear therefrom that the determination of the respondent in the instant case was not a determination under section 20 (subd. 1, par. [a]) as to the fitness of the applicant but rather was a determination by the respondent that the mandatory revocation provided for by section 93-h of one year was not sufficient but that it should be extended by reason of the fact that he had been convicted on July 15,1959 of driving without a license and that the mandatory revocation period of *1000 one year should run from July 15, 1959 rather than February 19, 1959 when it was imposed upon the petitioner.
I do not feel that the provisions of section 20 (subd. 1, par. [a]) can be invoked to support the respondent’s determination of April 13, 1960 or to sustain the affirmative defense in his answer; but even though such provisions could be so construed, they do not give the respondent any discretion to extend the mandatory period of one year specified in section 93-h under the guise of a determination of the fitness of an applicant. As already pointed out, the Legislature clearly did not intend to extend the discretion given the Commissioner under section 71 (subd. 5) to the revocation directed under the provisions of section 93-h. Neither did it see fit to add to the mandatory one-year revocation provision contained in section 93-h, a provision that the Commissioner, in his discretion could withhold the issuance of an operator’s license after the expiration of one year as they did under section 71 (subd. 5). The Legislature clearly could have done so had it so intended.
It is understandable that the respondent would be justifiably incensed that during the period of revocation, the petitioner was convicted of driving without a license. No such action can be condoned. Obviously, however, there can be no further revocation where there is no license to revoke. The Legislature, by the provisions of section 70 (subd. 6) has specifically provided a penalty for such violations and has designated the same a misdemeanor. Further than this the Legislature recognizes that a penalty should be provided for second and third violations by a driver whose license had been revoked. Very severe penalties are provided for more than one such violation within an 18-month period. Had the Legislature seen fit, it surely could have made some provision denying the issuance of any license to a person driving while his license was revoked for such time thereafter as it felt advisable.
It would, therefore, seem clear that the respondent in this case has proceeded upon an erroneous theory, namely, that he has the right, in his discretion, to fix the length of time that the petitioner’s license should be withheld. I have been unable to find any statutory provision therefor and I believe that the respondent’s authority must be statutory. In addition to this, upon the statement of his own counsel, the respondent, in considering the petitioner’s conviction of July 15,1959, has assumed that the petitioner continued to drive without a license until the time of his conviction. If this is so, the petitioner’s application has been judged upon an assumption of facts the truth of which has not been established, and he was not advised that such *1001 assumption had entered into the Commissioner’s determination of April 13, 1960, and thus had no opportunity to seek a review on such ground.
The petitioner’s application was not presented to the court until May 17, 1960 and he has been given permission to reapply on July 15, which is less than 30 days away. It might be argued, therefore, that no substantial injustice would result from the denial of this application for the reason that the only inference which can be drawn from the respondent’s letter of April 13, 1960 is that all things being equal, the petitioner’s application would be favorably considered if made after July 15, 1960.
To follow such a suggestion, the court would place its approval upon the procedure which has been followed by the respondent in the present case.
The determination must be annulled and the respondent directed to reconsider the petitioner’s application dated March 29, 1960 in accordance herewith.
This determination should not be considered in any way to restrict the petitioner in his right to file a new application as of July 15, 1960, as authorized in the respondent’s letter of April 13, 1960, if the petitioner should so elect.